**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Joy McElmurry,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Department of Agriculture,<br><br>Defendant. | No. CV-12-02234-PHX-GMS<br><br>**ORDER** |

Defendant Arizona Department of Agriculture ("the Department") has moved to dismiss (Doc. 10) counts two and four of Plaintiff pro se Barbara Joy McElmurry's Amended Complaint (Doc. 7) under Rule 12(b)(6). For the reasons discussed below, the Court grants in part and denies in part the Department's Motion.

## BACKGROUND[1]

The Department hired McElmurry on February 1, 2010. (Doc. 7 at 3.) She worked at a lab in Yuma, Arizona, on the Department's efforts to combat the Asian citrus psyllid (ACP), a small insect. (*Id.*) Her job consisted of screening traps set by other employees in the field. (*Id.*) She worked with a team of other lab employees. (*Id.* at 3–4.)

There were tensions between many of the employees at the Yuma lab. McElmurry attempted to raise health concerns with Jerry Reiffenberger, who oversaw the Yuma ACP program. (*Id.* at 3, 6.) She informed Reiffenberger that another employee was developing

---

[1] The Court takes as true the allegations contained in McElmurry's Amended Complaint at this stage of the litigation. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996)

1    carpal tunnel syndrome based on the repetitive nature of the trap screening process, and
2    also raised issues with her supervisors about the poor quality of light in the facility. (*Id.* at
3    6.) Reiffenberger took no corrective action, but did stroke McElmurry's arms and
4    shoulders so she "would not get carpal tunnel syndrome." (*Id.*) Those who complained of
5    health problems were sent to the field or fired, regardless of their physical condition and
6    had their workman's compensation claims denied. (*Id.* at 6–7.)

7          Mary Garman was eventually promoted to supervise McElmurry and the lab team.
8    (*Id.* at 5–7.) Garman often berated the lab employees for not taking her calls while the
9    employees were at lunch. (*Id.* at 7.) On several occasions, Garman accused McElmurry of
10   making mistakes on her reports that turned out to be mistakes in Garman's own
11   calculations. (*Id.* at 8, 10.) On at least two occasions, Garman stroked McElmurry's arm,
12   hugged her, or rested her head on McElmurry's head. (*Id.* at 8, 11.) Garman committed
13   similar acts of harassment and bullying during McElmurry's tenure, including not
14   allowing anyone to talk, listen to the radio, or use the restroom in the building. (*Id.* at 8–
15   15.)

16         As tensions mounted between McElmurry, Garman, and other supervisors,
17   Garman increased the screening quota from 105/150 to 250 traps. (*Id.* at 12.) McElmurry
18   objected to the change, citing concerns among the screeners about eye-strain, headaches,
19   neck aches, and back aches. (*Id.*) Nevertheless, Garman pressed forward with the change
20   and several employees, including McElmurry, suffered health problems. (*Id.* at 12–13.)
21   McElmurry informed Reiffenberger about the situation but he took no action. (*Id.* at 13.)
22   McElmurry stated her intent to file harassment charges against Garman. (*Id.*)

23         Garman began telling McElmurry that she would be fired or demoted for her
24   actions. (*Id.* at 14.) McElmurry reached out to the Human Resources Department with
25   little success. (*Id.*) After accusing McElmurry of sabotaging the screening results,
26   Garman demoted McElmurry to field work, but McElmurry stated that she would be
27   unable to drive the vehicles due to her small stature (her height is around 4'10''). (*Id.* at
28   15–16.) Garman nevertheless forced McElmurry into field duty, where McElmurry

suffered injury. (*Id.* at 17.)

On December 1, 2010, McElmurry arrived at work and was fired. (*Id.* at 18.) She was informed by Human Resources that "Arizona is [a] right to work state and they can fire you anytime they want without reason." (*Id.*)

McElmurry filed a charge of employment discrimination with the Arizona Civil Rights Division on January 14, 2011. (Doc. 11, Ex. 2.)[2] She received a Notice of Right to Sue on October 5, 2011. (*Id.*) She also filed a charge with the EEOC, alleging violations of Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. (*Id.*, Ex. 1.) The EEOC issued a Dismissal and Notice of Rights on August 8, 2012. (*Id.*) McElmurry filed her Complaint on October 18, 2012. (Doc. 1.) That Complaint was initially screened and dismissed by the Court under Rule 8. (Doc. 6.) McElmurry then filed an Amended Complaint on November 19, 2012. (Doc. 7.) In her Amended Complaint, McElmurry asserts claims for retaliation, discrimination, harassment, and wrongful termination. (*Id.* at 1.) The Department filed the instant Motion to Dismiss on February 1, 2013. (Doc. 10.)

## DISCUSSION

**I.  LEGAL STANDARD**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir.

---

[2] The Court takes judicial notice of the two Notices from the Arizona Civil Rights Division and the EEOC because they are documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading," *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (alteration in original).

2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**II.   ANALYSIS**

The Department has moved to dismiss the discrimination and wrongful termination claims on a number of substantive and procedural grounds.

**A.   Discrimination**

McElmurry does not cite any laws or cases that support her discrimination claim. Nevertheless, she presses two specific claims of discrimination in her Amended Complaint: "[d]iscrimination against me because of my age and short stature . . . ." (Doc. 7 at 1.) If McElmurry is intending to assert a claim against the Department for age discrimination based on the Age Discrimination in Employment Act of 1969, 29 U.S.C. §§ 621, et seq. ("ADEA"), that suit is barred by the doctrine of sovereign immunity. Under the Eleventh Amendment to the Constitution, "agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005) (internal quotations omitted).

1  That immunity remains present until it is expressly waived by either the state itself or
2  Congress, acting pursuant to its powers under § 5 of the Fourteenth Amendment. *See id.*;
3  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–55 (1976) ("Congress may, in determining what
4  is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth
5  Amendment, provide for private suits against States or state officials which are
6  constitutionally impermissible in other contexts.") The Supreme Court struck down as
7  unconstitutional Congress's attempt to abrogate state sovereign immunity under the
8  ADEA. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000) ("[W]e hold that the
9  ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth
10 Amendment. The ADEA's purported abrogation of the States' sovereign immunity is
11 accordingly invalid."). McElmurry cannot therefore press an ADEA claim against a state
12 agency like the Department.
13     That would still leave state law avenues open, such as a claim for age
14 discrimination under the Arizona Civil Rights Act, Ariz. Rev. Stat. § 41-1461, et seq.
15 ("ACRA"). But ACRA places strict time limits on when an individual may file suit.
16 Specifically, § 41-1481(D) states that "[w]ithin ninety days after the giving of [a] notice
17 [by the Civil Rights Division] a civil action may be brought against the respondent named
18 in the charge by the charging party. . . . In no event shall any action be brought pursuant
19 to this article more than one year after the charge to which the action relates has been
20 filed." It is not clear when McElmurry actually received her Notice from the Civil Rights
21 Division.[3] Nevertheless, it is clear that she filed her charge of discrimination with the
22 Civil Rights Division on January 14, 2011. (Doc. 11, Ex. 2.) That meant she had to file
23 any lawsuit no later than January 14, 2012. She filed this action on October 18, 2012,
24 nine months after the date required by ACRA. Therefore her age discrimination claim
25 must be dismissed. It is barred by sovereign immunity under federal law, and it is
26 untimely under state law.

---

[3] The Notice is dated October 5, 2011. (Doc. 11, Ex. 2.)

McElmurry also asserts a claim for discrimination on the basis of disability, namely, her short stature. As a preliminary matter, any disability discrimination claim she brings under state law is barred for the same reasons as her age discrimination claim—it is untimely under ACRA. Her claim must arise, if at all, under the federal Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). A prima facie case of employment discrimination under the ADA requires McElmurry to show, among other things, that she had a disability. *See* 42 U.S.C. § 12112. A person is disabled within the meaning of the ADA if she suffers from "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Id.* § 12102(1)(A). Beyond this definition, the ADA does not specify what impairments qualify. The EEOC, however, has elaborated on how it approaches the statute:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within "normal" range and are not the result of a physiological disorder.

29 C.F.R. Pt. 1630, App. § 1630.2(h).

Height is therefore not a typical impairment. It was in this vein that the Supreme Court made the following observation prior to the amendment of the ADA:

> By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria. An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity. Accordingly, an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment—such as one's height, build, or singing voice—are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490–91 (1999).

McElmurry, however, has alleged that her height is outside the normal range. She stands around 4'10". (Doc. 7 at 13.) The Department has claimed that height can never be

- 6 -

1 a disability, citing *Sutton*. The Court is unable to make such a conclusion on the very
2 limited record before it on this Motion to Dismiss. It is plausible that "short stature"
3 could, in some contexts, "substantially limit[ ] one or more of the major life activities of
4 an individual." 42 U.S.C. § 12102(1)(A). The Department's claim that "Plaintiff cannot
5 demonstrate her height is a disability", (Doc. 10 at 2), is premature. At this early stage,
6 the terms of the Amended Complaint are taken as true. Given that posture, the Court
7 rejects the Department's blanket assertion.

8 The Department also claims that even if McElmurry has a claim under the ADA,
9 she has failed to exhaust her administrative remedies by filing a Charge of
10 Discrimination. But she did. (Doc. 11, Ex. 1.) The exact nature of the claims made the
11 charge she filed with the EEOC is unclear at this point because the actual Charge is not
12 before the Court. Nevertheless, the EEOC's Notice references the ADA. (*Id.*) Therefore,
13 the Department's claim that McElmurry did not file a Charge is unsupported.

14 The Court dismissed McElmurry's claims of age discrimination under the ADEA
15 and ACRA, and her claims of disability discrimination under ACRA. Her claim of
16 disability discrimination under the ADA survives the Department's Motion.

17 **B. Wrongful Termination**

18 Count Four of McElmurry's Amended Complaint alleges wrongful termination
19 under Arizona law. *See* Ariz. Rev. Stat. § 23-1501. Arizona, however, has enacted a
20 Notice of Claim law, which has the following strict requirement: "Persons who have
21 claims against a public entity or a public employee shall file claims with the person or
22 persons authorized to accept service for the public entity or public employee as set forth
23 in the Arizona rules of civil procedure within one hundred eighty days after the cause of
24 action accrues." *Id.* § 12-821.01(A). It does not appear that McElmurry has served a
25 Notice of Claim on the Department. Arizona courts have held numerous times that a
26 failure to comply with the Notice of Claim statute operates as a bar against any claim that
27 a plaintiff asserts against a public entity or employee. *Harris v. Cochise Health Sys.*, 215
28 Ariz. 344, 351, 160 P.3d 223, 230 (Ct. App. 2007) ("[P]laintiff's failure bars any claim

against the entity or employee.")

In addition, the statute of limitations has expired. McElmurry had one year from the time of her wrongful termination to file suit. Ariz. Rev. Stat. § 12-541(4); *see Int'l Union of Elec. Workers, Local 790 v. Robbins & Meyers, Inc.*, 429 U.S. 229, 234–35 (1976) (absent other indicators, wrongful termination accrues at discharge). Dismissal occurred on December 1, 2010, and this action was filed on October 18, 2012, long after the expiration of the statute of limitations. The Court must therefore dismiss McElmurry's wrongful termination claim.

## CONCLUSION

The Court dismisses McElmurry's claims of age discrimination under the ADEA and ACRA, her claims of disability discrimination under ACRA, and her claim for wrongful termination. Her claim of disability discrimination under the ADA survives the Department's Motion to Dismiss, as do the other claims in her Complaint.

**IT IS THEREFORE ORDERED** that the Department's Motion to Dismiss (Doc. 10) is **granted in part and denied in part.**

Dated this 11th day of June, 2013.

*A. Murray Snow*
_____
G. Murray Snow
United States District Judge